**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO.1:21-cv-10986

JASMINE HUFFMAN, JUSTIN ACKERS, CAITLYN HALL, and BENJAMIN CHAMBERS-MAHER

    Plaintiffs,

v.

CITY OF BOSTON, and MICHAEL BURKE, EDWARD JOSEPH NOLAN, and MICHAEL J. MCMANUS, in their individual capacities,

    Defendants.

**CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## I. INTRODUCTION

Defendant City of Boston (the "City") respectfully moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Count III of Plaintiffs' First Amended Complaint ("Complaint"). As grounds therefor, the City states that Count III (42 U.S.C. § 1983 Claim Against Defendant City of Boston), even in its amended form, is insufficiently pleaded because it sets forth conclusory allegations without any factual support and relies on isolated or unrelated incidents that fail to establish that a custom or policy of the City was the moving force behind Plaintiffs' alleged injuries.

## II.   FACTS AND BACKGROUND[1]

Plaintiffs' Complaint contains the following three causes of action: (1) 42 U.S.C. § 1983 Claim Against Defendants Burke, Nolan and McManus: Unreasonable Use of Force; (2) 42 U.S.C. § 1983 Claim Against Defendants Burke, Nolan and McManus: First Amendment Violation; and (3) 42 U.S.C. § 1983 Claim Against Defendant City of Boston.

As alleged in the amended Complaint, the Plaintiffs attended a protest in downtown Boston on May 31, 2020.  The three defendant police officers used unreasonable and excessive force on the Plaintiffs.  See Complaint, ¶¶ 121–126.  The City is named as a defendant for its "policies, customs and practices in handling protest demonstrations and allowing the use of unreasonable and excessive force."  See id. at ¶¶ 4, 135.  Specifically, the Plaintiffs allege that the Boston Police Department (the "BPD") "did not follow a proper plan for handling a protest at the Boston Common, the officers were not properly supervised, and the had allowed a 'blue wall' to exist, which prevented police officers from reporting misconduct by other officers and tolerated use of unreasonable or excessive force."  Id. at ¶ 4.  More detailed allegations against the City are specified below.

Failure to Supervise

The Complaint alleges that at a similar protest held in Boston two days earlier, on May 29, 2020, Boston police officers were photographed "randomly spraying people with OC spray and using unnecessary force on protesters," including with fists and batons.  See id. at ¶¶ 88–89. According to the Complaint, an attorney filed a public records request for use of force reports or use of defensive tactics reports from May 29, 2020, but the City responded on October 2, 2020,

---

[1] For the limited purposes of the instant motion, the City accepts the nonconclusory facts alleged in the Complaint as true.

that it had no such records.  See id. at ¶ 90.  Use of force reports should be made and reviewed by a supervisor promptly in order for the reports to be a meaningful tool for police supervision and police accountability.  Id. at ¶ 91.  The Complaint alleges that although Boston Police Department Rule 304 required a "thorough investigation of every incident in which a police officer strikes someone with any object or an incapacitating agent," this policy "has not been followed for many years," nor does the BPD "conduct a thorough investigation of use of force reports even when a person has a physical injury."  See id. at ¶ 92.  The Complaint asserts that the BPD's non-enforcement of the requirement that officers prepare a use of force report "sends a message to officers that they can use force without being concerned that their actions will be reviewed by their supervisors," thereby "abdicat[ing] the BPD's responsibility to supervise use of force by its police officers" and "results in officers using unreasonable force on civilians."  See id. at ¶¶ 93–94.

### Failure to Investigate

The Complaint alleges that the City had a "policy or custom of indifference to misconduct by Boston police officers by failing to properly investigate complaints of misconduct and to discipline officers who used unreasonable or excessive force."  Id. at ¶ 110.  According to the Complaint, the City had a "policy or custom of tolerating a 'code of silence' or a 'blue wall' in which Boston police officers understood that they were not to report misconduct by fellow police officers."  Id. at ¶ 111.  Citing the "recently publicized scandals involving Commissioner Dennis White and union president Patrick Rose," the Complaint alleges that this policy existed in the early 1990s.  See id. at ¶ 112.  According to the Complaint, "[b]oth of these officers were investigated for serious misconduct (domestic abuse and sexual abuse of children, respectively) in the 1990's but officers protected them."  Id.  The Complaint also alleges that in 1995, the

"blue wall" of silence prevented Boston police officers from truthfully reporting the beating of Michael Cox, a Black undercover police officer, by other Boston police officers who did not realize he was a fellow officer.  Id. at ¶ 113.

The Complaint alleges that on May 14, 2021, Acting Boston Mayor Kim Janey said that "officers were intimidated into silence for fear of retaliation" during the 2021 investigation into allegations against Commissioner White, and that "a blue wall of silence was confirmed by one retired officer who said he received five phone calls directing him not to cooperate with this investigation."  See id. at ¶ 114.  The Complaint states that the independent investigator was unsuccessful in her attempts to speak with several current or former members of the BPD.  Id.  According to the Complaint, "because of this 'blue wall' police officers in Boston felt free to use unreasonable and excessive force on protesters.  They expected fellow officers would not report their misconduct or intervene to prevent their misconduct.  They knew that the police department would accept the word of a police officer over the word of a civilian."  Id. at 115.

In addition, the Complaint alleges that the BPD "developed a custom of making it difficult for citizens to file complaints about the conduct of Boston police officers."  Id. at ¶ 116. The Complaint states that the BPD's review board found that there is "a strong perception that citizens do not have easy access to filing complaints in supportive and non-intimidating environments."  Id. at ¶ 116.  According to the Complaint, this supposed custom is evident in the way Plaintiff Caitlyn Hall was deterred from pursuing her complaint against officers.  Id.  The latter claim is presumably a reference to the assertion that following the alleged incident of excessive force involving Officer Edward Joseph Nolan, Hall called a general BPD number to file an internal affairs complaint, but was told that she could only file a complaint in person, and that this information "discouraged [Hall] from filing a complaint" because she did not want to go

to a police station.  See id. at ¶¶ 66–67.  In addition, plaintiffs Huffman and Chambers-Maher filed internal affairs complaints against BPD after the alleged incidents of excessive force.  See id. at ¶¶ 46, 86.  They were both interviewed by internal affairs shortly thereafter, but according to the Complaint, "the questioning was designed to make [them] feel like [they were] at fault."  See id.

Finally, the Complaint alleges that the BPD "allowed a custom to develop among its officers of failing to properly investigate [internal affairs] claims and failing to discipline officers who used unreasonable force."  Id. at ¶ 117.  Citing Cox v. Murphy, Civ. No. 12-11817, 2016 WL 4009978, at *10–11 (D. Mass. Feb. 12, 2016), the Complaint states that "BPD officers with many complaints alleging use of unreasonable force were rarely disciplined for their use of force."  See Complaint, ¶ 117.  The Complaint specifies that the Internal Affairs Division of the Boston Police Department "has, for many years, had a practice of delaying findings on investigations of officer misconduct.  Often investigations linger for one to two years, sometimes even longer."  Id. at ¶ 118.  As evidence of this "practice," the Complaint alleges that Plaintiffs Huffman and Chambers-Maher filed complaints shortly after the protest on May 31, 2020, but BPD has not yet completed its investigations into these complaints.  See id. at ¶ 119.

### Lack of Plan

According to the Complaint, Police Commissioner William Gross knew that BPD officers had struck non-violent protesters and "improperly and indiscriminately used OC spray on protesters" on May 29.  See id. at ¶ 95–97.  Despite this knowledge, the commissioner did not take steps to ensure that the BPD would have an appropriate plan" to deal with additional demonstrations.  See id. at ¶ 98.  Citing multiple protests that took place on the Boston Common, the Complaint states the BPD knew that "when there is cause for protest in Massachusetts, or

5

when it is a time of national protests, they can expect people will gather on the Boston Common." Id. at ¶¶ 99–100. The Complaint further alleges that City policymakers had a plan in place for dealing with protests "long before May 31, 2020," but claims that the City ignored those plans for the protest on May 31, 2020. See id. at ¶ 103.

### III. ARGUMENT

#### A. Standard of Review.

A complaint or count therein must be dismissed where it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court is obliged to accept the Plaintiffs' well-pleaded facts as they appear, granting every reasonable inference in their favor. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). However, this tenet does not apply to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). Mere recitals of the element of a cause of action, supported only by conclusory statements, do not suffice. See id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545 (citations omitted). A plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). "Although pleading standards are minimal, the First Circuit requires more than conclusions or subjective characterizations." Columbus v. Biggio, 76 F. Supp. 2d 43, 52 (D. Mass. 1999) (citations and quotations omitted). A complaint will not "suffice if it tenders naked assertion[s] devoid of further factual enhancement."

Twombly, 550 U.S. at 557 (quotations omitted). "Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). As discussed below, Plaintiffs' claims against the City should be dismissed for failing to meet the Twombly pleading requirements.

### B. Count III Must Be Dismissed Because the Plaintiffs Have Failed to Properly Plead a 42 U.S.C. § 1983 Action Against the City.

Count III must be dismissed because the Plaintiffs have failed to properly plead a 42 U.S.C. § 1983 action against the City. To plead municipal liability for a constitutional violation, the plaintiffs must allege (1) an unconstitutional "policy or custom" of the City, *and* (2) that this policy or custom was "the moving force" behind the alleged injury. See Board of County Commissioners v. Brown, 520 U.S. 397, 403–405 (1997). A "municipality's failure to train or supervise its police officers only becomes a basis for liability when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" Kennedy v. Town of Billerica, 617 F.3d 520, 531–532 (1st. Cir. 2010), quoting Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011). The Supreme Court, "concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high bar for assessing municipal liability under Monell." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). Furthermore, a plaintiff must show a persistent failure to supervise, investigate or discipline that demonstrates the existence of a City custom or policy. Barker v. City of Boston, 795 F. Supp. 2d 117, 124 (D. Mass. 2011).

7

The Plaintiffs' failure to supervise claim is based on conclusory factual allegations that do not satisfy the Monell standard. Although the Complaint alleges that police officers "were photographed" using excessive and unreasonable force against protesters on May 29, 2020, (Complaint, ¶ 88), it does not name any individuals that were subjected to such excessive force, nor does it provide any additional facts to support these assertions. The statement that officers were using excessive and unreasonable force is entirely conclusory – a bare assertion made by Plaintiffs but not supported by factual details. Similarly, Plaintiffs do not provide any details or examples to support their claim that the City has not followed its policy of investigating use of force incidents "for many years" (Complaint, ¶ 92). Moreover, it is well-settled that municipal liability does not attach if it is based solely on one specific incident in which the City failed to discipline its employees. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–824 (1985); Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) ("[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell"). The Plaintiffs' failure to supervise claim rests on one night of civil unrest that was experienced all over the country. The Complaint's allegations about the use of force on May 29, 2020, or the lack of excessive force reports filed afterward, does not demonstrate a custom or policy on the part of the City. By contrast, in Cox v. Murphy, Civ. No. 12-11817, 2016 WL 4009978, at *10–11 (D. Mass. Feb. 12, 2016), a case cited in the Complaint, the plaintiff in an excessive force suit presented evidence that the two defendant police officers had at least fourteen citizen complaints and six lawsuits alleging excessive force between them.

The Plaintiffs' claims regarding BPD's investigation into civilian complaints of police misconduct are equally conclusory. The allegations that BPD "developed a custom of making it difficult for citizens to file complaints about the conduct of Boston police officers" (Complaint,

8

¶ 116), or that it "had a practice of delaying findings on investigations of officer misconduct" (Id. at ¶ 118), are nothing more than rote recitations of the basic elements of a municipal liability claim that, without any specificity or factual support, are insufficient to plead a claim for municipal liability under Section 1983.  See Allen v. New York County Jail, 2003 WL 221842, at *8 (D. Me. Jan. 30, 2003) ("Simply because the plaintiff has managed to say the magic words 'custom' and 'policy' does not mean that his complaint properly pleads municipal liability"). The same is true of the allegation that the interviews conducted in response to the Plaintiffs' internal affairs complaints were "designed to make [them] feel like [they were] at fault."  See Complaint, ¶¶ 46, 86.  Indeed, the fact that the Plaintiffs were interviewed by internal affairs shortly after they filed their complaints is evidence that BPD took the complaints seriously. Moreover, the claims that plaintiff Hall was told that she could only file a complaint in person (Complaint, ¶¶ 66–67), or that the internal affairs complaints of plaintiffs Huffman and Chambers-Maher are still pending (Complaint, ¶ 119) fall far short of demonstrating that BPD has a policy or custom of preventing or delaying investigations into police misconduct.  See Tuttle, 471 U.S. at 823–824.

       The Plaintiffs' claims regarding a "blue wall of silence" (Complaint, ¶¶ 110–115) fail to satisfy the Monell standard because they merely string together disparate allegations that are completely unrelated to the incidents of excessive force that are alleged to have taken place on May 31, 2020.  The allegations concerning Patrick Rose and Michael Cox stem from incidents that happened more than twenty-five years ago and have no bearing on the issue of the BPD's response to a largescale protest.  See Complaint, ¶¶ 112–113.  Similarly, Mayor Janey's comments regarding the investigation into allegations against former police commissioner Dennis White were made almost a year after the May 31, 2020, protest, in a matter that has

9

nothing to do with allegations of excessive use of force. See id. at ¶ 114. These allegations fail to establish a Monell claim. Cf. Young, 404 F.3d at 29 (identified deficiency must be "closely related to the ultimate injury"); Eason v. Alexis, 824 F.Supp.2d 236, 246 (D. Mass. 2011) (evidence of citizen complaints against police officer were insufficient to establish Monell claim in excessive force suit where none of the complaints had "anything to do with the kind of constitutional violations alleged" in suit) (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 583 n.5 (1st Cir. 1994)). In addition, the Complaint's equivocal reference to a finding of the BPD's "review board" (Complaint, ¶ 116) regarding the filing of internal affairs complaints does not appear to have any relation to the May 31, 2020, protest. Conspicuously absent from the Complaint is any allegation that the BPD maintained a culture of silence regarding incidents of improper force in response to protests. Indeed, the Plaintiffs acknowledge that Boston police "refrained from using improper force when policing other events . . . ." See Complaint, ¶ 129. In any event, the Complaint's reference to unrelated incidents does not establish a policy or custom of the City of Boston, let alone a policy or custom that was "the moving force" behind the Plaintiffs' alleged injuries. See Brown, 520 U.S. at 403–405.

      Finally, the claim that municipal liability should attach because the BPD "did not follow a proper plan for handling a protest at the Boston Common" (Complaint, ¶ 4), rests on a contradiction. On the one hand, the Complaint avers that the police commissioner "did not take steps to ensure that the BPD would have an appropriate plan" to deal with demonstrations after the one on May 29, 2020, took place. See Complaint, ¶ 98. On the other hand, the Complaint admits that City policymakers had a plan in place for dealing with protests "long before May 31, 2020," but claims that the City ignored those plans. See id. at ¶¶ 102–103. Plaintiffs cannot have it both ways. Further, any deviation from a previously developed plan on the night of May

31, 2020, amounted to a single incident that cannot give rise to municipal liability. See Tuttle, 471 U.S. at 823–824. The count against the City should be dismissed.

IV.     **CONCLUSION**

For the foregoing reasons, the defendant, City of Boston respectfully requests that this Honorable Court dismiss Count Three of Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Defendant,
City of Boston
By its attorneys,

Henry C. Luthin
Corporation Counsel


/s/ *Randall Maas*
Erika Reis, BBO# 669930
Senior Assistant Corporation Counsel
Nieve Anjomi, BBO# 651212
Senior Assistant Corporation Counsel
Randall Maas, BBO # 684832
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
617-635-4034
Erika.Reis@boston.gov
Nieve.Anjomi@boston.gov
Randall.Maas@boston.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 1, 2021

| | |
|---|---|
| 9/1/2021 | /s/ *Randall Maas* |
| Date | Randall Maas |