UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE HUFFMAN, JUSTIN ACKERS, CAITLYN HALL, and BENJAMIN CHAMBERS-MAHER, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BOSTON, and MICHAEL BURKE, EDWARD JOSEPH NOLAN, and MICHAEL J. MCMANUS, in their individual capacities, <br><br> Defendants. | C.A. 21-10986-ADB |

**PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS NOLAN AND McMANUS' MOTIONS TO DISMISS**

Plaintiffs, Jasmine Huffman, Justin Ackers, Caitlyn Hall, and Benjamin Cambers-Maher, by their attorneys, respectfully respond in opposition to Defendants Edward Joseph Nolan and Michael J. McManus' partial Motions to Dismiss (Doc. Nos. 22-25), as follows:

**INTRODUCTION**

Plaintiffs bring claims of excessive force and First Amendment retaliation against Defendants Nolan and McManus, and Boston police officer Michael Burke.[1] These claims stem from Defendants' reaction to Plaintiffs' participation in peaceful protests against an epidemic of police use of excessive force and racism nationwide. These protests engendered anger among a large segment of police officers nationally and locally.

---

[1] Defendant Burke has been on military duty thus he has yet to be served with the complaint.

That police anger, stemming from an us-against-them attitude of policing, was based on the idea that protests against unlawful policing were "anti-police." That attitude underlies the blue "code of silence" or "blue wall" that Boston's own mayor admits exists in the ranks of the Boston Police Departments. The "code of silence" stems from the idea that police should be allowed to engage in misconduct against citizens with impunity.

Police across the country reacted violently toward these peaceful critical protests in places like Kenosha, Wisconsin where police turned over the streets to right-wing, racist militia groups resulting in the death of peaceful protesters. In Boston, it took the form of overt widespread police violence against peaceful protesters. Within that backdrop, Defendants Nolan and McManus used unlawful violence against Plaintiffs. Plaintiffs' allegations, and all the reasonable inferences stemming from them, support that there was no legitimate reason for Defendants to inflict wanton violence on Plaintiffs other than in retaliation for the content of the protests.

Defendants Nolan and McManus incorrectly claim that Plaintiffs' allegations of First Amendment retaliation are inadequate. Using Defendants' too narrow reading of the pleading rules, a First Amendment retaliation claim could never be made absent an overt admission from the government actor that his retaliation was based on protected First Amendment activity. The applicable pleading standards do not support Defendants' narrow approach. Instead, Defendants' request for dismissal of Plaintiff's First Amendment claims is a nonstarter and should be denied.

## BACKGROUND

### Police Misconduct Protests on Boston Common

Defendants Nolan and McManus unlawfully struck peaceful protesters who gathered in one of the United States' most important symbols for free speech—Boston Common—to protest

police violence after George Floyd was murdered by a Minneapolis police officer. Doc. No. 15., ¶¶ 3, 54, 56, 58, 76, 80. The first such protest occurred on May 25, 2020, when people across the country gathered to protest police brutality and racism in policing. *Id*., ¶¶1, 14. Various Boston police officers spoke out against the protests by claiming that they were "anti-police." *Id*., ¶ 15.

Each Plaintiff went to Boston Common on May 31, 2020, to peacefully protest the injustice of George Floyd's death. *Id*., ¶¶ 1, 16. Plaintiffs were all peaceful. *Id*., ¶¶ 1, 18. They did not commit any crimes, nor were they arrested or charged with crimes. *Id*., ¶¶ 1, 31, 42, 64, 81.

Despite engaging in peaceful protest, each Plaintiff was physically attacked by Boston police officers. *Id*., ¶ 2, 21-23, 34-36, 39, 51-58, 76. These officers struck three of the four plaintiffs with wooden riot batons. *Id*., ¶¶ 21-23, 34-36, 51-58. Officers sprayed two of the four plaintiffs with oleoresin capsicum ("OC") (pepper) spray. *Id*., ¶¶2, 20, 26, 76. Two plaintiffs required medical attention because of the Boston police officers' baton strikes. *Id*., ¶¶ 2, 65.

**Defendants Nolan and McManus Used Unlawful Violence**

Plaintiffs Hall and Chambers-Maher were the victims of unlawful violence by Defendants Nolan and McManus. Defendant Nolan struck Plaintiff Hall as she stood near the Downtown Crossing T station with her hands up. *Id*., ¶¶ 54-58. Defendant McManus and other Boston police officers pepper sprayed and struck Plaintiff Chambers-Maher as he peacefully walked to get to his car. *Id*., ¶¶ 3, 76.

At approximately 9:30 to 9:45 p.m. on May 31, 2020, Plaintiff Hall was in Downtown Crossing trying to return home after peacefully protesting on Boston Common. *Id*., ¶ 48. Ms. Hall was trying to return home, but was not able to enter the T station because it had been closed by authorities. *Id*., ¶49. She also was unable to use area streets because police had blocked many

3

of them. *Id.*, ¶50. As she was standing with her hands up along with other peaceful protesters, she saw Defendant Nolan begin to strike a young man in the head. *Id.*, ¶51. The young man had simply been standing and recording police with his phone. *Id.* Ms. Hall tried to use her hand to protect the young man's face from the baton blow. *Id.*, ¶53. Defendant Nolan then hit Ms. Hall in the face with his baton. *Id.*, ¶54. His blow hit Ms. Hall hard enough that she fell to the ground, hitting her head on the pavement hard enough that she lost consciousness. *Id.*, ¶¶ 55, 57. Defendant Nolan's blow was also hard enough that it caused Ms. Hall's tooth to puncture her lip. *Id.*, ¶56. After she came to, Ms. Hall showed Defendant Nolan the injury he had caused her, and Nolan responded by hitting her in the chest. *Id.*, ¶58. Ms. Hall then tried to walk away from Defendant Nolan, who hit her again, this time on her back. *Id.* None of the blows that Defendant Nolan delivered to Ms. Hall were justified—Ms. Hall had not committed a crime nor was she arrested or charged with a crime. *Id.*, ¶ 61, 64. A civilian saw the incident and complained to the police department. *Id.*, ¶ 68.

Plaintiff Chambers-Maher, a disabled veteran, also went to Boston Common to peacefully protest the police murder of George Floyd in particular and racially motivated police misconduct in general. *Id.*, ¶ 69-70. Around 9:30 p.m., Mr. Chambers-Maher tried to walk to his car to leave. *Id.*, ¶73. He found that he could not directly get to his car because Boston police closed several streets. *Id.*, ¶72. Around 9:39 p.m., Defendant McManus approached Mr. Chambers-Maher as he was walking on Tremont Street. *Id.*, ¶¶73-74. Defendant McManus and another officer pointed their weapons at Mr. Chambers-Maher, who walked away backwards, taking video of the officers as he did so. *Id.*, ¶75. Without any provocation, Defendant McManus then sprayed Mr. Chambers-Maher's face with OC spray. *Id.*, ¶¶ 76-77. Defendant McManus returned and sprayed Mr. Chambers-Maher with pepper spray again. *Id.*, ¶76. Defendant

McManus also used his police bicycle to hit Mr. Chambers-Maher in the legs. *Id.*, ¶80. There was no justification for any of this violence—Mr. Chambers-Maher had not committed a crime nor was he was arrested or charged with a crime. *Id.*, ¶¶77, 81.

## ARGUMENT

### A.     STANDARDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants Nolan and McManus are not entitled to dismissal of Plaintiff's First Amended Complaint claims against them. Plaintiffs' Amended Complaint, and all reasonable inferences flowing from the allegations therein, state a viable claim of First Amendment retaliation by Defendants Nolan and McManus.

In deciding whether to dismiss a complaint under Rule 12(b)(6), a court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citations omitted); *see also Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).

In a First Amendment retaliation case, the requirement that a court consider all reasonable inferences stemming from the close connection between the protected speech and the resulting government official misconduct is particularly compelling because inferences may be required to determine retaliation (few government actors would expressly state that their misconduct is based on retaliation, so inferences form the context of the retaliatory conduct). *See Wright v. Town of Southbridge*, No. 07–40305–FDS, 2009 WL 415506, at *5 (D. Mass. Jan. 15, 2009). For this reason, dismissing a complaint on a Rule 12(b)(6) motion "is a dubious practice in a close[ ] case, particularly one involving a First Amendment claim." *Dewey v. University of N. H.*, 694 F.2d 1, 3 (1st Cir. 1982).

Regardless of the heightened protection provided for a First Amendment retaliation claim, a plaintiff merely needs to plead facts and causes of action fairly raised by these facts. *Snyder v. Collura*, 812 F.3d 46, 50 (1st Cir. 2016) (citations omitted); *see also* FED. R. CIV. P. 8. Plaintiff, therefore, is not required to plead his claims with a high level of detail; rather, a complaint need only put a defendant on notice as to legal theories. *Cf. Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016) (explaining that Rule 8 does not "call for the pleading of exquisite factual detail"); *Rodríguez–Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 283 (1st Cir. 2014); *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 718 (1st Cir. 2014). To survive a motion to dismiss, a complaint need only state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 545.

Dismissing a complaint is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Limone v. Condon*, 372 F.3d 39, 43 (1st Cir. 2004) (citations omitted). Moreover, where, as here, circumstances show that the defendants have sole possession of relevant information, pleading standards are relaxed. *See*, *e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2nd Cir. 2008) (involving a post-*Twombly* challenge). Plaintiff's First Amendment claims against Defendants meet the required pleading threshold.

**B.     PLAINTIFFS PLEAD VIABLE FIRST AMENDMENT CLAIMS AGAINST DEFENDANTS NOLAN AND MCMANUS**

Plaintiff plausibly alleges that Defendants Nolan and McManus are liable for targeting them for violence based on their participation in protected speech that included publicly protesting against police misconduct and taking video of police activity. Doc. No. 15, Count II.

Specifically, Defendants Noland and McManus targeted each Plaintiff with violence in an effort to retaliate against them for opposing police misconduct and for directly taking video or protecting a person taking video of the police. *Id*.

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (citations omitted). Therefore, if an officer takes adverse action against a citizen based on that person's protected speech, the injured person may seek relief by bringing a First Amendment claim. *Id*. (citations omitted). To prevail on a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id*. (citations omitted). A plaintiff must show that "the adverse action against [him/her] would not have been taken absent the First Amendment retaliatory motive." *Id*. (citations omitted).

Drawing all inferences in favor of Plaintiffs, the Amended Complaint alleges sufficient facts that Defendant Nolan and McManus targeted them for violence based on the content of their speech. *See Ruiz*, 496 F.3d at 5. As alleged in Plaintiffs' Amended Complaint, it was open and obvious that Plaintiffs were present at and participating in a protest against police misconduct. Because there was no other justification for attacking Plaintiffs, a reasonable inference can (and for purposes of a motion to dismiss must) be drawn that Plaintiffs' participation in the police misconduct protest was the precipitating event causing Defendants Nolan and McManus to engage in wanton violence.

That Defendants were retaliating based on the content of Plaintiffs' protest against police misconduct is further supported by admissions from Defendant City of Boston that its officers shield each other from allegations of misconduct by citizens. Doc. No. 15, ¶¶ 111-115. A

reasonable inference is that this "blue wall" created a culture that fostered an attitude among officers that criticism of police would not be tolerated. This culture manifested itself in the violence committed against Plaintiffs and the failure of any officer to come to the aid of any Plaintiff to prevent the unlawful violence. *Id.*, ¶¶26, 44, 62, 78. The repeated failures to intervene by hundreds of police officers support an inference that the purpose of Plaintiffs' speech motivated the unlawful police response.

Moreover, the violence inflicted by Defendants Nolan and McManus on Plaintiffs came contemporaneously with someone openly recording video of Defendants. A reasonable inference that could (and for purposes of the pending motion must) be drawn is that each Defendant was angered by being recorded. Retaliation for a citizen taking video of a police officer is a separate basis for Plaintiff's claims of First Amendment retaliation. It has long been settled that citizens have a First Amendment right to take video of police exercising police power in public. *See Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011).

Plaintiffs expressly allege that Defendants had no other bases besides First Amendment retaliation for physically attacking them. They had not committed any crimes, nor were they resisting or interfering with police. Absent any possible justification for the violence, a reasonable inference is that Defendants inflicted violence because they opposed the messages that Plaintiffs conveyed—that they stood against police misconduct. This is particularly true given that direct proof of the actual subjective motive rests with Defendants. In situations like this, in which the Defendants themselves control evidence that can be used to support Plaintiff's claims, pleading standards are relaxed. *Boykin*, 521 F.3d at 215. Defendants are not entitled to dismissal of the Count II of Plaintiff's Amended Complaint against them alleging that they retaliated against Plaintiffs based on their exercise of their rights under the First Amendment.

## CONCLUSION

Plaintiffs bring viable claims against Defendants Nolan and McManus for retaliating against them for exercising their rights under the First Amendment. There was no lawful justification for the violence that was inflicted on Plaintiffs. The primary reasonable inference is that Defendants Nolan and McManus disapproved of what they perceived to be the "anti-police" nature of the protests and set out to retaliate against those who participated. An additional reasonable inference is that Defendants Nolan and McManus retaliated against Plaintiffs because Defendants disapproved of the First Amendment-protected activity of taking video of them doing their jobs in public. These reasonable inferences must be considered as part of deciding Defendants' motion according to the applicable standards. Defendants Nolan and McManus are not entitled to dismissal of Plaintiffs' First Amendment retaliation claims.

RESPECTFULLY SUBMITTED,
For the Plaintiffs,
By their attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
**Law Offices of Howard Friedman PC**
1309 Beacon Street, Suite 300
Brookline, MA 02446
(617) 742-4100
hfriedman@civil-rights-law.com

/s/ Mark Loevy-Reyes
Mark Loevy-Reyes, BBO No. 707974
**Loevy & Loevy**
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Ph: (312) 243-5900
Fax: (312) 243-5902
mark@loevy.com

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for all parties via CM/ECF.

Date: September 23, 2021   /s/ Howard Friedman
                                                Howard Friedman