UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASMINE HUFFMAN, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 21-10986-ADB |
| CITY OF BOSTON, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PLAINTIFFS' MOTION TO COMPEL
[Docket No. 65]

December 18, 2023

Boal, M.J.

Plaintiffs Jasmine Huffman, Justin Ackers, Caitlyn Hall, and Benjamin Chambers-Maher (collectively "Plaintiffs") move to compel Lieutenant Detective James Conley to answer questions regarding police officers' communications during a Critical Incident Stress Debriefing ("CISD"). Docket No. 65.[1] For the following reasons, I grant Plaintiffs' motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2020, following the murder of George Floyd, numerous individuals, including Plaintiffs, protested on Boston Common. Docket No. 15 ¶ 1. Plaintiffs allege, inter alia, that during and after their peaceful protest, Boston police officers, including defendants Michael Burke, Edward Joseph Nolan, and Michael J. McManus, subjected them to unreasonable and excessive force in retaliation for exercising their First Amendment rights. Id. ¶¶ 2-3.

---

[1] On October 12, 2023, Judge Burroughs referred the motion to the undersigned. Docket No. 67.

1

Following the protest, between July 7, 2020 and August 8, 2020, the Peer Support Unit within the Boston Police Department, held a series of CISDs for Boston police officers. Docket No. 74-1 ¶ 8. The Peer Support Unit focuses on officer health and wellbeing. Docket No. 74 at 2. CISDs are educational stress debriefings and not operational critiques. Docket No. 91-3 at 1. However, when deemed necessary by the BPD, attendance is mandatory. Id. No notes or records are made about what occurs at the sessions. Id. Per the Clinical Director of BPD's Critical Incident Stress Management Team, the sessions are "not therapy." Docket No. 91-2 at 1. The operative memorandum[2] pertaining to CISDs provides that: "All interactions between [Boston Police Critical Incident Support Team] members with Boston Police personnel during any type of team intervention shall be kept strictly confidential, in accordance with the provisions of G.L. c. 112, §§ 134, 135A, and 135B[3] which govern privileged communications. See Bernard v. Commonwealth, 424 Mass. 32 (1996)." Docket No. 91-3 at 3.

Conley, defendant Burke's commanding officer, testified at a deposition on September 14, 2023. He and one-third of his unit participated together in a "stress debriefing" session. Docket No. 66-1 at 2, 3, 10. The remainder of his unit participated in similar briefings. Id. at 3, 10. Conley stated that he never received therapy from the individual who led the debriefing. Id. at 9. He did not know the individual's name or qualifications. Id. at 7-8. He met the person only once at the group session. Id. at 8. Conley testified that the topics of discussion included the "antipolice sentiment that was evident" and the officers' feelings. Id. at 3. Conley's counsel

---

[2] The City initially provided a memorandum describing the CISDs that was dated July 1, 2022, almost two years after the events at issue here. See Docket No. 74-5. On December 15, 2023, the City clarified that the memorandum dated July 10, 1998 was in effect in the summer of 2020. Docket No. 103.

[3] These statutes pertain to confidential communications between a social worker and client and the potentially resulting testimonial privileges. The Bernard case involves an interpretation of the scope of those statutes. In support of their arguments, the Defendants rely on Bernard, but not explicitly on these statutes directly.

directed him not to answer questions regarding what was said during the session based on "a therapist privilege, a counsel privilege, [and a] EAP privilege." Id. at 6-7.

In their amended complaint dated August 16, 2021, Plaintiffs assert the following claims pursuant to 42 U.S.C. § 1983: (1) unreasonable and excessive use of force in violation of the Fourth Amendment against Burke, Nolan, and McManus; and (2) violation of the First Amendment against Burke, Nolan, and McManus; and (3) a municipal liability claim against the City. Docket No. 15 at 18-20. On October 12, 2023, they filed the instant motion to compel. Docket No. 65. The City and Conley (for the purposes of this order, "Defendants") filed an opposition on November 2, 2023, and Plaintiffs filed a reply on November 13, 2023. Docket Nos. 74, 77. This Court heard oral argument on November 21, 2023. On November 27, 2023, Defendants filed supplemental materials, to which the Plaintiffs responded. Docket Nos. 91, 93.

II.   STANDARD OF REVIEW

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

III.   DISCUSSION

A.   Relevance

Plaintiffs contend that Burke, Nolan, and McManus, as well as other officers have given "startlingly consistent versions of the events that night—as if the officers all got their stories straight to protect each other from accountability for misconduct." Docket No. 66 at 1-2.

Plaintiffs assert that this unusual level of consistency may be attributable to the officers' participation in debriefing sessions following the protests. Id. at 2. Specifically, Plaintiffs point to testimony from Conley in which he stated that one of the debriefing topics was the officers' perception of antipolice sentiment at the protests. Id. These discussions, Plaintiffs argue, are relevant to their claims that Burke, Nolan, and McManus failed to act professionally because they believed that Plaintiffs and others "were protesting against police officers rather than against police officers who abused their authority." Docket No. 15 ¶ 130; Docket No 66 at 2.

"To succeed on a First Amendment retaliation claim, 'a plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action.'" Huffman v. City of Bos., No. 21-CV-10986-ADB, 2022 WL 2308937, at *4 (D. Mass. June 27, 2022) (quoting D.B. ex rel. Elizabeth B v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012)).  If the officers believed that Plaintiffs were protesting against all police officers rather than officers who abused their authority, such beliefs may be material as to whether Plaintiffs' protected conduct was a substantial or motivating factor in the officers' actions.

Under Monell v. Dep't of Social Servs. of City of New York and subsequent cases, a plaintiff seeking to prove municipal liability under Section 1983 must identify a municipal policy or custom that caused the plaintiff's injury. Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978); City of Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985); Young v. City of Providence, 404 F.3d 4, 25 (1st Cir. 2005). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of the County of Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been

formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404. "To show discovery is relevant to a Monell claim, the information sought must relate to the city's alleged policy or custom that has caused the plaintiff harm." Agyeah v. City of Worcester, No. 4:21-CV-40020-MRG, 2023 WL 6961885, at *3 (D. Mass. Oct. 20, 2023). If, as plaintiffs allege, there is a practice within the department of ensuring that all of the officers agree on the same story to protect each other from accountability for misconduct, information relating to a meeting during which such communications occurred is relevant. For all of these reasons, this Court concludes that proposed testimony is relevant to the issues in the case.

B.   Privilege[4]

Defendants seek a protective order that precludes testimony about communications made during the CISDs. They, however, have struggled to define the precise nature of a privilege to support such an order. At the deposition, the Defendants' attorney based the direction not to answer on "a therapist privilege, a counsel privilege, [and a] EAP privilege." Id. at 6-7. In their opposition memorandum, they argue that "communications made at a critical incident debriefing as a part of an employee assistance program are confidential and privileged under federal common law." Docket No. 74 at 4. At oral argument, Defendants' counsel argued that this Court should recognize a qualified federal common law privilege for communications made by police officers during peer support meetings or CISDs. The confusing nature of the request, on this basis alone, justifies the denial of a protective order.

---

[4] The Defendants state the privilege asserted here is "much like the patient-psychotherapist privilege." Docket No. 74 at 1. They make no such showing. "'[A] party asserting the psychotherapist-patient privilege must show that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment.'" Riley v. Massachusetts State Police, No. 15-14137-DJC, 2017 WL 11487867, at *3 (D. Mass. Apr. 12, 2017). For example, there has been no showing that the sessions were for the purpose of diagnosis or treatment.

Questions of privilege in federal question cases are governed by federal law. See Fed. R. Evid. 501. The use of federal privileges is especially relevant in civil rights cases against state actors because state authorities could insulate themselves by developing privileges if state law controlled. See e.g., Alford v. Beck, No. CV148874FMOAGRX, 2017 WL 11631965, at *2 (C.D. Cal. Mar. 3, 2017). As a principle of comity, federal courts will recognize state evidentiary privileges as a matter of federal common law where this can be accomplished at no substantial cost to federal procedural and substantive policy. Ali v. Long Creek Youth Dev. Ctr., No. 2:18-CV-00109-JAW, 2019 WL 302488, at *4 (D. Me. Jan. 21, 2019) (citing Green v. Fulton, 157 F.R.D. 136, 139 (D. Me. 1994)). The party claiming the privilege has the burden of establishing its existence. United States v. Lilly, 185 F.R.D. 113, 115 (D. Mass. 1999).

While courts can be adaptive and flexible regarding the law of privilege, "they should not use the power to recognize new privileges expansively." In re Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc., 400 F. Supp. 2d 386, 389-90 (D. Mass. 2005) (citations omitted). Recognizing a new privilege contravenes the "fundamental principle that the public has a right to every person's evidence." Id. at 390 (citations and internal quotation marks omitted).

The First Circuit has directed courts to consider the following when deciding whether to recognize a new privilege under federal common law: (1) whether Massachusetts courts would recognize such a privilege; and (2) whether the asserted privilege is "intrinsically meritorious." United States v. Massachusetts Gen. Hosp., Inc., 498 F. Supp. 3d 186, 190 (D. Mass. 2020) (citing In re Hampers, 651 F.2d 19, 22 (1st Cir. 1981)). The Defendants request for a protective order fails on the first prong alone.

Defendants argue that the subject communications are privileged under Massachusetts law. In support, they cite to Commonwealth v. Bernard, 424 Mass. 32 (1996). In Bernard, the Massachusetts Supreme Judicial Court ("SJC") found that the social worker privilege applied to

6

a state law enforcement officer who performed such work, even though he was not a licensed social worker. Id. at 35-36. The SJC held that "recognition of the social worker privilege for unlicensed social workers employed by the State is consistent with the Legislature's policy of permitting social work by such employees." Id. at 36. However, that case involved a single counselor providing services to a single patient – not a group debriefing.

Defendants also cite to M.G.L. c. 233, § 20O[5]. Docket No. 74 at 6. Defendants do not cite to, and this Court is not aware of, any Massachusetts cases interpreting M.G.L. c. 233, § 20O. In addition, section 20O only precludes provider, not participant, testimony.

For these reasons, the Defendants have not shown that Massachusetts courts would recognize the privilege requested by the Defendants. While there is undoubtedly good that inures to society and the individual officers from group debriefing sessions, the Defendants have simply not met their burden to withhold the information sought by the Plaintiffs on the basis of privilege.

IV.   ORDER

For the foregoing reasons, I grant Plaintiffs' motion to compel.

/s/ Jennifer C. Boal  
JENNIFER C. BOAL  
United States Magistrate Judge

---

[5] The statute states, in relevant part, that crisis intervention is defined as "immediate short-term psychological care provided by a certified emergency service provider providing critical incident stress management to an emergency service provider after said emergency service provider's response to a critical incident." M.G.L. c. 233, § 20O(a). Any information provided during such a session shall be confidential (including a prohibition on requiring testimony from the provider) except as provided in subsection (c). Id. § (b)(i). Subsection (c) contains a number of exceptions including a scenario where "the certified emergency service provider or licensed mental health professional providing crisis intervention services has reasonable cause to believe that the emergency service provider receiving the crisis intervention services has engaged in conduct in violation of any federal or state law." Id. § (c).